Rosanne L. Mah (State Bar No. 242628)
Email: rmah@zlk.com
**LEVI & KORSINSKY, LLP**
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

*Counsel for Plaintiff*

[*Additional Counsel listed on signature block.*]

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ORLITZKY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SUNWORKS INC., CHARLES F. CARGILE, DANIEL GROSS, JUDITH HALL, RHONE RESCH, and STANLEY SPEER,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Michael Orlitzky ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Sunworks, Inc. ("Sunworks" or the "Company") and the members of Sunworks' board of directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") arising out of a materially incomplete and misleading Registration Statement filed on Schedule S-4 (the "Registration Statement") with the U.S. Securities and Exchange Commission (the "SEC") on October 1, 2020.

2. On August 10, 2020, Sunworks announced that it had entered into a definitive agreement (the "Merger Agreement") with Peck Co. Holdings, Inc. ("Peck") pursuant to which each share of Sunworks common stock will be converted into the right to receive 0.185171 (the "Exchange Ratio") fully paid and nonassessable shares of Peck common stock (the "Proposed Transaction").

3. In connection with the Proposed Transaction, on October 1, 2020, the Company filed a Registration Statement with the SEC. The Registration Statement is materially deficient and misleading because, *inter alia*, it omits material information concerning the background of the transaction, the company's financial projections, and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Holthouse Carlin & Van Trigt LLP ("HCVT"). The omission of such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to cast a properly informed vote on the Proposed Transaction.

4. For these reasons and as set forth in detail herein, Defendants have violated Sections 14(a) and 20(a) of the Exchange Act. Judicial intervention is warranted here to prevent irreparable harm to the Company's stockholders. The stockholder vote on the proposed transaction (the "Stockholder Vote") is forthcoming. Therefore, it is imperative that the material information omitted from the Registration Statement be disclosed to the Company's stockholders prior to Stockholder Vote so that they can properly determine how to vote.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under §§ 14(a) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. The Court has personal jurisdiction over all of the defendants because each is either a corporation that is headquartered in this district, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because a substantial portion of the transactions and wrongs complained of herein, occurred in this District, and Sunworks is headquartered in this District.

## PARTIES

8. Plaintiff is, at all relevant times, the owner of shares of Sunworks common stock.

9. Defendant Sunworks is incorporated in Delaware and is a premier provider of high-performance solar power systems. Sunworks' principal executive offices are located at 1030 Winding Creek Road, Suite 100, Roseville CA 95678. Sunworks' common stock is publicly traded on Nasdaq under the ticker symbol "SUNW".

10. Individual Defendant Charles Cargile ("Cargile") has served as the Company's Chief Executive Officer and Chairman of the Board since March 2017.

11. Individual Defendant Daniel Gross ("Gross") was appointed to serve as a director of the Company in April 2018.

12. Individual Defendant Judith Hall ("Hall") has served as a member of the board since October 2019.

13. Individual Defendant Rhone Resch ("Resch") has served as a director of the Company since November 2016.

14. Individual Defendant Stanley Speer ("Speer") was appointed to serve as a director of the Company and Chairman of the Audit Commit in May 2018.

15. Defendants Speer, Resch, Hall, Gross, and Cargile are collectively referred to herein as the "Board" or the "Individual Defendants."

16. The Individual Defendants and Sunworks are referred to herein as "Defendants."

## OTHER RELEVANT ENTITIES

17. Non-party Peck is one of the largest commercial solar engineering, procurement and construction ("EPC") companies in the country and is expanding across the Northeastern United States. Peck is a second-generation family business founded under the name Peck Electric Co. ("Peck Electric") in 1972 as a traditional electrical contractor. Peck's principal executive offices are located at 4050 Williston Road, #511, South Burlington, Vermont 05403, and its telephone number is (802) 658-3378. Peck's Common Stock is publicly traded on Nasdaq under the ticker symbol "PECK".".

## FURTHER SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

18. In September of 2017, Sunworks' CEO was introduced to the CEO of Peck Electric (the "Peck CEO) by a consultant to Peck Electric. On September 25, 2017, Sunworks' CEO and Peck's CEO met telephonically to discuss a potential strategic transaction. An in-person meeting of the same individuals occurred on October 18, 2017 in New York City and included Rob Fink of Hayden IR. Sunworks management and Peck Electric Co.'s management recognized the potential strategic benefits of a combination between Sunworks and Peck, including the geographic presence of Peck on the East Coast and Sunworks on the West Coast, but the discussions were high-level with no specific terms discussed. These initial conversations ceased as Sunworks and Peck pursued other strategic opportunities.

19. In 2018, these discussions restarted after Sunworks' unrestricted cash dropped significantly, and Sunworks was forced to enter into a Loan Agreement with CrowdOut Capital, LLC ("CrowdOut"), under which Sunworks borrowed a total of $3,750,000 in order to provide additional necessary working capital to fund operations. The loan had a maturity date of June 30, 2020.

20. Following the execution of the Loan Agreement, Sunworks held discussions with a private company in the solar industry ("Party A") and Peck concerning a strategic transaction.

21. On June 3, 2019, Sunworks entered into an amendment to its loan agreement with

CrowdOut to extend the maturity date of the loan from June 30, 2020, to January 31, 2021. As consideration for the extension, Sunworks was required to issue to CrowdOut 400,000 shares of its Common Stock. Sunworks considered such an extension necessary in order to provide more time to find an appropriate strategic transaction partner, to sell the business, or to refinance the debt.

22. On June 20, 2019, Peck Electric successfully merged with a Nasdaq listed special purpose acquisition company and Peck Electric became a wholly owned subsidiary of Peck which began trading on Nasdaq under the trading symbol PECK. Almost immediately thereafter, on June 27, 2019, Mr. d'Amato, then Peck's Corporate Secretary and Head of Business Development contacted the Sunworks CEO by text message and then by e-mail on June 28, 2019 to inform the Sunworks CEO that Peck was now listed on Nasdaq and that it was open to strategic opportunities.

23. Following further discussions between the two entities, on October 9, 2019, Sunworks and Peck signed a confidentiality agreement related to discussions regarding a potential business relationship. This confidentiality agreement did not restrict the parties from making unsolicited proposals to enter into any other business transactions or contain any other standstill restrictions. Over the next few months, members of Sunworks' management and Peck's management engaged in preliminary discussions with respect to a potential strategic transaction between the two companies.

24. On December 6, 2019, the Sunworks Board held a meeting with members of Sunworks' management to discuss potential strategic opportunities and the current financial health of Sunworks. During the meeting, the Sunworks Board directed Sunworks management to pursue strategic alternatives including with Peck and another private company in the solar industry that had approached Sunworks ("Party B").

25. On December 20, 2019, Sunworks and Party B executed a confidentiality agreement related to discussions regarding a potential business relationship. This confidentiality agreement did not restrict the parties from making unsolicited proposals to enter into any other business transactions or contain any other standstill restrictions.

26. In January 2020, a private company ("Party C") contacted the Sunworks CEO regarding a potential acquisition of the assets of Sunworks by Party C.

27. On January 9, 2020, Party B sent Sunworks an email outlining Party B's valuation expectation for an acquisition of Party B by Sunworks. These expectations were shared with the Sunworks Board. Party B proposed an enterprise value for Party B in the aggregate of $22.8 million.

28. Following a review of Party B's offer, the Sunworks board rejected Party B's offer and on January 30, 2020, Sunworks provided Party B with an updated proposed letter of intent.

29. On January 31, 2020, Party C and Sunworks executed a confidentiality agreement related to a potential strategic transaction between Party C and Sunworks. This confidentiality agreement did not restrict the parties from making unsolicited proposals to enter into any other business transactions or contain any other standstill restrictions.

30. On February 13, 2020, Sunworks and Party B executed a letter of intent. The letter of intent with Party B valued Party B at up to $25 million if earnouts were achieved.

31. On February 13, 2020, due to issues related to the valuation of Sunworks and in connection with the execution of the letter of intent with Party B, Sunworks ceased discussions with Party C regarding its potential acquisition of Sunworks.

32. Between February 2020 and March 2020, the Sunworks CEO met with several financial advisors regarding the transaction between Sunworks and Party B. However, these discussions ceased later in March after uncertainty related to COVID-19 and caused Party B and Sunworks to cease discussions related to the potential transaction. As a result, the letter of intent with Party B was terminated on March 24, 2020.

33. On April 3, 2020, Mr. d'Amato sent an email to the Sunworks CEO discussing a new idea relating to a triangular merger between Peck, Sunworks and another strategic party ("Party D").

34. In April of 2020, an investment banking team representing a private foreign company ("Party E") contacted Sunworks' CEO regarding a potential strategic transaction. Party E's proposal involved a reverse merger with Party E becoming a wholly owned subsidiary of Sunworks and a subsequent sale of Sunworks' operating business. On April 17, 2020, Party E presented Sunworks with an initial draft of a non-binding letter of intent related to the transaction between Sunworks and Party E. The letter of intent proposed that Sunworks' stockholders would retain approximately 10% of the equity of the surviving public entity and would receive contingent value rights relating to the

sale of Sunworks' business, capped at $2 million.

35. On April 29, 2020, Sunworks' CEO emailed Mr. d'Amato to indicate that Sunworks had been approached for another transaction, but that the synergies were not as compelling as those provided by a merger between Peck and Sunworks.

36. On May 20, 2020, the Sunworks Board held a meeting with members of Sunworks' management and in attendance. At the meeting, Sunworks' CEO updated the Sunworks Board on several potential strategic opportunities presented to the Sunworks CEO, including the transaction with Party E, the strategic transaction with Peck, and two investment bankers that expressed interest in recommending non-strategic private companies to reverse-merge into Sunworks. Following the meeting, the Board authorized Sunworks' management to continue discussions with each of the various third parties discussed at the meeting.

37. On May 27, 2020, Peck provided Sunworks with a proposed term sheet (the "Term Sheet") regarding a potential all stock strategic transaction between Peck and Sunworks.

38. After multiple communications between Peck's management and Sunworks' management, Peck returned a revised draft of the Term Sheet to Sunworks on June 12, 2020. The updated Term Sheet provided for the issuance of $8 million of Peck shares at closing, reinserted an exclusivity provision on Sunworks only with a $500,000 break-up fee and provided for an issuance of $1.0 million of equity to Peck management after closing.

39. In June of 2020, at the direction of the Board, the Sunworks CEO met with the CEO of another strategic private party ("Party F"). On June 10, 2020, Sunworks received a draft letter of intent from Party F. The proposal received on June 10, 2020 valued the equity of Sunworks at approximately $4.1 million and requested a 60-day exclusivity obligation.

40. On June 12, 2020, Sunworks received a revised draft letter of intent from Party E. Under the terms of the revised letter of intent, the stockholders of Sunworks would retain approximately 10% of the equity of the surviving public entity and a third-party investor affiliated with Party E would purchase all of the assets of Sunworks immediately prior to the reverse merger for $7 million. Party E also demanded a 120-day exclusivity period during which Sunworks would not be able to entertain other offers.

41. On June 17, 2020, the Sunworks Board held a meeting with members of Sunworks' management attending to discuss negotiations with Party F, Party E and Peck. Following this review, the Sunworks Board authorized Sunworks' management to continue discussion with both Party E and Peck to negotiate better terms.

42. Throughout the remaining month of June, the Sunworks Board discussed the relative merits of a proposed transaction with Peck and Party E, and determined that a transaction involving Peck provided higher long-term value for Sunworks' stockholders over the transaction with Party E. Thereafter, the Sunworks Board unanimously authorized the Sunworks CEO to finalize and execute the Term Sheet with Peck.

43. On July 20, 2020, at the direction of the Sunworks Board, Sunworks engaged HCVT to conduct an analysis of the proposed exchange ratio to be fixed in the Merger Agreement and to render a written opinion to the Sunworks Board as to whether the exchange ratio would be fair to the stockholders of Sunworks from a financial point of view.

44. Following the execution of the Term Sheet, until August 10, 2020, Sunworks and Peck continued to conduct due diligence on the other party, including attending virtual presentations given by management of the other company, conducting telephonic due diligence sessions, reviewing documents posted to virtual data rooms maintained by each party and other customary due diligence.

45. On August 8, 2020, the Sunworks Board held a meeting to review the finalized merger agreement. During the meeting, representatives from HCVT, financial advisor to Sunworks, reviewed their financial analysis of the proposed transaction and delivered its oral opinion, subsequently confirmed in writing by delivery of a written opinion dated August 10, 2020, that the exchange ratio pursuant to the proposed Merger Agreement was fair, from a financial point of view, to the holders of Sunworks Common Stock. Following the discussion, the Sunworks Board unanimously determined that the Merger was advisable and in the best interest of Sunworks and its stockholders, approved the Merger Agreement, the other documents related thereto, and the transactions contemplated thereby and resolved to recommend that Sunworks' stockholders vote in favor of the Merger.

46. On August 10, 2020, Sunworks and Peck entered into the Merger Agreement and

Sunworks and Peck issued a joint press release announcing the Merger Agreement.

47. The press release states in pertinent part:

**SOUTH BURLINGTON, VT and ROSEVILLE, CA – Business Wire – August 10, 2020** – The Peck Company Holdings, Inc. (NASDAQ: PECK) ( "Peck"), a leading commercial solar engineering, procurement and construction (EPC) company and Sunworks, Inc. (NASDAQ: SUNW) ("Sunworks"), a provider of solar power solutions for agriculture, commercial and industrial ("ACI"), public works and residential markets, today announced that they have entered into a definitive agreement under which Peck will acquire Sunworks in an all-stock transaction, pursuant to which each share of Sunworks common stock will be exchanged for 0.185171 shares of Peck common stock (subject to certain adjustments). Assuming no adjustments, Sunworks' stockholders would receive an aggregate of approximately 3,079,207 shares of Peck common stock, representing approximately 36.54% of Peck common stock outstanding after the merger.

**Merger Rationale and Highlights**

● Combination creates a national leader with a coast-to-coast presence poised to capitalize on significant cost synergies.

● Improves scale and strengthens national presence, with pro forma revenue of $88 million if the companies had been combined in 2019, and a combined backlog of $76.8 million if the companies had been combined as of June 30, 2020.

● Management has identified approximately $6 million in anticipated annualized cost synergies, including supply chain management leverage, redundant public company costs and various operating expenses.

● The transaction is expected to be accretive to earnings and free cash flow after integration synergies have been implemented.

● Combined company will have significantly expanded addressable market to leverage Sunworks' core capabilities in agriculture and public works.

● Combination leverages Peck's strategic partnership with GreenBond Advisors to provide project development and financing to fuel growth and solar project ownership improving the conversion of Sunworks' pipeline and expanding its addressable market.

● Peck and Sunworks installed a combined 62,973kW in 2019, which would rank 41st overall and would be the 16th largest EPC contractor based on the latest Sun Power World ranking list.

**Management Commentary**

Jeffrey Peck, Chairman of the Board and Chief Executive Officer of Peck, commented, "This is a transformational combination, leveraging the respective strengths of the two organizations and creating a national leader in the fast-growing and resilient solar energy industry. It provides Peck expansion, scale, an enhanced financial profile and a

stronger platform from which we can continue to build more solar projects. Our integration with Sunworks will extend our presence to the west coast and broaden our offerings to agriculture and public works. The transaction solidifies our three-pronged growth strategy that we announced a year ago when we listed on Nasdaq through a SPAC merger. Since we have been public, we (1) delivered organic growth of revenue from $16 million to $28 million in the first year, (2) partnered with GreenBond Advisors to access capital that provides EPC revenue as well as asset ownership in the solar projects we build for the partnership, and now (3) we are delivering on the third prong of our strategy with an exciting accretive acquisition. We have been focused on executing these important initiatives for our shareholders and expect the acquisition of Sunworks to provide many more opportunities for long term growth and profitability."

Chuck Cargile, Chairman of the Board and Chief Executive Officer of Sunworks, added, "By joining with Peck, our vision for spreading clean solar energy throughout the U.S. is amplified and expanded. Peck has demonstrated the ability to grow revenue and maintain profitability, and we believe that the combination of our teams, customers, projects and partners will materially accelerate revenue growth and earnings. Peck's strong partnership with Green Bond Advisors will allow us to offer financing to a broader range of customers and increase our addressable market. Additionally, our expanded scale will enable us to source solar panels and equipment through Peck's established relationships at lower costs, benefiting our profit margins. Being part of Peck's platform is exciting, and in the best interest of Sunworks shareholders, customers, business partners and employees."

**Transaction Details**

The transaction is expected to close during the fourth quarter of 2020, subject to approval by shareholders of both companies and other customary closing conditions.

The Board of Directors of Peck and Sunworks have each unanimously voted in favor of the definitive transaction agreement.

As part of the agreement, after the transaction closes, Jeff Peck will continue as Chairman of the Board and Chief Executive Officer of the combined company. The Board of Directors of the combined company will be comprised of four members of the Peck Board of Directors and three members appointed by the Sunworks Board of Directors. Because the combined company will be in competition with SunPower Corporation in some markets, Doug Rose, who is also a Vice President at SunPower Corporation, has resigned from the Board of Directors of Peck to avoid conflicts of interests.

**The Materially Misleading Registration Statement**

48.     Designed to convince stockholders to vote their shares in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the fairness of the Proposed Transaction, and the process leading up to the signing of the Merger Agreement.

49. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Sunworks stockholders.

*Material Omissions Concerning the Sales Process leading up to the Proposed Transaction*

50. The Recommendation Statement fails to disclose material information related to the confidentiality agreements Sunworks signed with numerous parties.

51. Specifically, the Recommendation Statement states that Sunworks executed confidentiality agreements with numerous parties including Party B and Party C, but fails to disclose whether Party F, the entity most likely able to submit a competing bid to the company, was subject to a confidentiality agreement. Furthermore, the Registration Statement also fails to disclose whether such an agreement contained a standstill agreement and/or a "don't ask, don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect.

52. Any reasonable stockholder would deem the fact that likely bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information. However, the Recommendation Statement fails to disclose the details of the confidentiality agreement executed between Sunworks and Party F. The failure to plainly disclose Party F's confidentiality agreement and the existence of DADW provisions creates the false impression that any of the parties who signed confidentiality agreements could have made a superior proposal. However, if Party F was subject to a confidentiality agreement that contained DADW provisions, then Party F could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the descriptions of the confidentiality agreements the Company entered into in the Background of the Merger section of the Recommendation Statement misleading.

*Material Omissions Concerning The Financial Projections*

53. The Registration Statement describes the financial advisor's fairness opinion and the various valuation analyses the financial advisor performed in support of its opinion. However, the

description of the financial advisor's fairness opinion and the underlying analyses omits key inputs and assumptions. Without this information, as described below, Sunworks' public stockholders are being misled as to what weight, if any, to place on the financial advisor's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Sunworks stockholders, and its absence renders the description of the Financial Advisor's fairness opinion misleading.

54. With respect to the Company's Projections, the Registration Statement fails to provide material information concerning any of the financial projections either prepared by or approved by Sunworks management or utilized by HCVT. Specifically, the Registration Statement notes that HCVT utilized projections consisting of certain information relating to the historical, current and future operations, financial condition and prospects of Sunworks and Peck including, "***and in the case of Sunworks, internal financial projections (and adjustments thereto) prepared by the management of Sunworks relating to Sunworks for the fiscal years ending 2020 through 2025 and cash flow projections for the 13 weeks through October 18, 2020***." Registration Statement at 134.

55. These projections are vital to Sunworks' stockholders. In connection with rendering its opinion, HCVT reviewed, among other things, performed a Discounted Cash Flow Analysis on Sunworks with consideration of projected financial results. Specifically, the Registration Statement notes that "[u]sing internal financial projections (and adjustments thereto), prepared by the management of Sunworks and provided to HCVT, for fiscal years ending 2020 through 2025, HCVT performed an illustrative discounted cash flow analysis on Sunworks." Registration Statement at 141. However, the actual projections utilized in the analysis are not disclosed in the Registration Statement. Furthermore, these missing projections are not the only vital inputs and assumptions missing from HCVT's fairness opinion. In addition to the missing projections, the Registration Statement fails to disclose in the Discounted Cash Flow Analysis: (i) the inputs and assumptions underlying the selection of discount rates ranging from 11.0% to 13.0%; and (ii) the inputs and assumptions underlying the selection of exit multiple ranging from 4.0x to 5.0x.

56. Additionally, HCVT performed a Selected Precedent M&A Transactions Analysis, wherein it "observed overall low to high transaction value to revenue multiples and transaction value

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

to EBITDA multiples of the selected precedent M&A transactions of 0.06x to 1.13x (with a mean of 0.59x and median of 0.63x), and 4.3x to 19.7x (with a mean of 12.3x and a median of 9.8x)." Registration Statement at 140. "Based on the selected precedent M&A transactions analysis performed by HCVT described above," HCTV then "derived a range of multiples of *0.15x to 0.20x* based on the transaction value to revenue multiples based on the last 12 months ended June 30, 2020," which resulted in "an implied per share reference range from its selected precedent M&A transactions analysis of $0.60 to $0.76 per share." *Id*. Plainly, the reference range selected by HCTV was well below the mean and median ranged implied by the analyses. Nonetheless, the Registration Statement fails to disclose any basis whatsoever for applying these reduced reference range.

57. Finally, the Registration Statement provides that "Sunworks has paid another division of HCVT a flat fee for performing a quality of earnings analysis on Peck" and that "Peck's management prepared and provided to the Peck [b]oard, members of Sunworks management and the Sunworks Board, estimates of cost and revenue synergies and other pro forma effects, including the costs to achieve such synergies and other pro forma effects[.]" Registration Statement at 142. Although the Merger Consideration is comprised entirely of Peck common stock, the Registration Statement fails to disclose this information to Sunworks' shareholders.

58. Without such undisclosed information, Sunworks' stockholders cannot evaluate for themselves whether the financial analyses performed by the financial advisor was based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which financial advisor's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

59. The omission of this information renders the statements in the "Opinion of Sunworks' Financial Advisor" of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

### *Material Omissions Concerning Potential Conflicts of Interest involving HCVT*

60. Furthermore, the Registration Statement fails to disclose material information related

to potential conflicts of interest faced by the Company's financial advisor.

61. Specifically, in describing financial advisory or other services to Peck for which it received compensation, the Registration Statement notes that that HCVT has not previously, and does not currently, have any relationship with Peck.

62. However, with regard to the past work that HCVT has performed over the past two years with regard to Sunworks, the Registration Statement fails to disclose the fees that HCVT has received for this work, nor the precise nature of the work that it has performed. Without this information, there is a concern that the prior relationship between HCVT and the Company may have enabled these the Company to push HCVT to support a sale of the Company and influence the financial analyses provided to the Board.

63. Accordingly, without full disclosure of the exact nature of the work done by HCVT for the Company in the last two years, and the fees received for such work, Sunworks stockholders may be materially mislead as to HCVT's potential conflicts of interest.

***Material Omissions Concerning Potential Conflicts of Interest involving the Board***

64. Finally, the Registration Statement fails to disclose material information related to potential conflicts of interest faced by the Company's Board Members.

65. The Registration Statement notes that the board of directors of the post-merger company will be comprised of three directors designated by the current Sunworks Board. However, the Registration Statement fails to disclose any information regarding the timing of the negotiations that led to this unique benefit for Defendants. Notably, however, the Registration Statement does disclose that, on August 4, 2020, when the substantive Exchange Ratio negotiations were still ongoing, the parties met and discussed "Peck management's vision and future plans for the combined companies." Registration Statement at 124. Stockholders are entitled to know if board composition was discussed while substantive negotiations regarding Merger Consideration were being discussed.

66. This is particularly important information for stockholders to have because, Defendant Cargile and another member of Sunworks' management are also receiving a benefit not shared by Sunworks' common stockholders in the form of the repayment of a $750,000 subordinated note, which was partially funded by Defendant Cargile in the amount of $500,000, and which will be

repaid in full in connection with the closing of the Merger. Yet, the Registration Statement omits any information regarding the timing and/or substance of these conversations and negotiations. The materiality of this information is further supported by the fact that Defendant Cargile essentially controlled the negotiations of the Merger Agreement, and it is not clear from the Registration Statement whether Defendant Cargile was informing the full Board of all of his discussions with Peck and/or its affiliates and other potential counterparties.

67. For example, the Registration Statement notes that "[i]n January 2020, a private company ("Party C") contacted the Sunworks CEO regarding a potential acquisition of the assets of Sunworks by Party C" and that on January 8, 2020, Defendant Cargile provided an update on discussions with Party B – but not Party C – and the Board thereafter directed Defendant Cargile to continue discussions with Party B. Registration Statement at 118-19. The Registration Statement further provides that the Board also met on January 24, 2020 and there is no mention of Party C. The Registration Statement states that Sunworks and Party C entered a confidentiality agreement on January 31, 2020, and continued discussions until February 13, 2020, yet there is no indication that the full Board was ever made aware, nor authorized, these communications.

68. Given the lack of clarity regarding the actions made by certain board members and the benefits that they stand to receive in the Proposed Transaction, Sunworks stockholders may be materially mislead as to the Board's potential conflicts of interest.

69. Based on the foregoing disclosure deficiencies in the Registration Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Sunworks stockholders will suffer, absent judicial intervention, if Sunworks' stockholders are required to decide how to vote their shares without the above-referenced material misstatements and omissions being remedied.

70. As a result of the above-referenced misleading statements and omissions in the Registration Statement, Defendants violated Sections 14(a) and 20(a) of the Exchange Act.

71. Based on the foregoing disclosure deficiencies in the Recommendation Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Sunworks stockholders will suffer, absent judicial intervention, if Sunworks stockholders are required to decide whether to tender their shares without the above-referenced material misstatements and omissions

being remedied. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

72. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

73. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Proxy Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

74. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

75. The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

76. Here, Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things: (i) the Company's financial projections; and (ii) the valuation analyses of the financial advisor.

77. In so doing, Defendants made untrue statements of fact and/or omitted material facts

necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to Sunworks common stockholders although they could have done so without extraordinary effort.

78. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement notes that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the financial advisors, as well as their respective fairness opinions and the assumptions made and matters considered in connection therewith.

79. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company, and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the financial advisors' analyses in connection with their receipt of the fairness opinion, question the advisors as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement, and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

80. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from

the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

81. Sunworks is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

82. The misrepresentations and omissions in the Registration Statement are material to Plaintiff and Sunworks stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

83. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

84. The Individual Defendants acted as controlling persons of Sunworks within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sunworks and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

85. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

86.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  Thus, the Individual Defendants were directly involved in the creation of the Registration Statement.

87.     The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

88.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

89.     As set forth above, the Individual Defendants had the ability to exercise control over, and did control, a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

a) declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

c) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 23, 2020

**LEVI & KORSINSKY, LLP**

By: /s/ *Rosanne L. Mah*
Rosanne L. Mah
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
etripodi@zlk.com

*Counsel for Plaintiff*